# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-2491

_____

James Edward Smith,

*Plaintiff - Appellant*,

v.

Sammy D. Johnson, CO-I, Pine Bluff Unit, ADC; T. Dobbs, Varner Unit, ADC,

*Defendants - Appellees*,

Douglas E. Boultinghouse, Lt., Varner Unit, ADC; Justine M. Minor, Disciplinary
Hearing Officer, Arkansas Department of Correction,

*Defendant*s.

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: September 10, 2014
Filed: March 10, 2015

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

James Edward Smith, an inmate of the Arkansas Department of Correction, filed suit against Sammy D. Johnson, a correctional officer, under 42 U.S.C. § 1983, alleging a violation of Smith's Eighth Amendment rights. Smith asserts that Johnson and another officer acted with deliberate indifference to Smith's safety by placing him where another inmate could attack him and then intentionally punishing him for the altercation. The district court dismissed Smith's suit on the grounds that it was barred by either the doctrine of claim preclusion or issue preclusion in light of a prior decision by the Arkansas State Claims Commission on a claim by Smith. Because we conclude that neither doctrine precludes Smith's current suit, we reverse and remand for further proceedings.

I.

On December 20, 2009, Smith was labeled a "snitch" and attacked by three other inmates in the Varner Unit of the Arkansas Department of Correction. He was consequently removed from the Varner Unit and placed in protective custody. Smith alleges that Johnson returned him to the general prison population in the Varner Unit on January 28, 2010, without Smith's consent and in violation of departmental policies. According to Smith, another inmate attacked him the following day and severely beat him with his fist and a lock, causing scarring, a lost tooth, migraines, blurred vision, sensory losses, dizzy spells, and various psychological symptoms. After the attack, Smith claims that Johnson and other correctional officers punished him for a thirty-day period using "major disciplinary policies." Smith unsuccessfully pursued grievances regarding the altercation with the Department of Correction.

Smith then sought to redress his injuries by filing a *pro se* claim against the Department of Correction with the Arkansas State Claims Commission. Smith alleged that various correctional officers, including Johnson, "deliberately allowed" the other inmate to attack Smith, did nothing to protect Smith during the attack, and then punished Smith for the altercation to conceal their acts exposing him to the

attack. Smith claimed the officers' actions amounted to "deliberate indifference" and "cruel and unusual punishment." Smith also argued that an officer's confiscation of personal property from his cell amounted to cruel and unusual punishment. Smith sought damages for physical and psychological injuries, compensation for the "deliberate cruel and unusual punishment," and reimbursement for his personal property.

The Department of Correction moved to dismiss Smith's claims for failure to state a claim and for lack of jurisdiction on the ground that "[h]is claim is a federal constitutional violation, not a negligence claim," and that the Claims Commission lacked jurisdiction over violations of federal law. The Claims Commission denied the motion to dismiss. After a hearing, the Claims Commission dismissed Smith's claim based on his "failure to prove by a preponderance of the evidence any negligence on the part of the Respondent," *i.e.*, the Department of Correction.

Smith next filed suit in the district court under § 1983 against Johnson in his individual capacity. In his *pro se* complaint, Smith alleged that Johnson returned him to the Varner Unit with "deliberate indifference for [his] safety" from the other inmate who attacked Smith, and then "cruelly and unusually punished" Smith for the altercation, all in violation of the Eighth Amendment. Smith sought compensatory and punitive damages.

Johnson moved to dismiss Smith's claim on the grounds that the doctrine of *res judicata* barred him from relitigating the issues decided by the Claims Commission and from pursuing any claims arising out of the same facts. The district court granted the motion, ruling if the Claims Commission had jurisdiction to decide Smith's constitutional claim, then the § 1983 action was barred by claim preclusion. The district court concluded alternatively that if the Commission did not have jurisdiction over the constitutional claim, then issue preclusion barred Smith's claim because "his § 1983 claim is based on the same facts as his unsuccessful claim before the

Commission."  We review *de novo* the district court's dismissal of a claim based on *res judicata*, accepting the plaintiff's factual allegations as true.  *Laase v. Cnty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011).

## II.

Smith argues that the district court erred by dismissing his claims as barred by either claim or issue preclusion.  We conclude first that claim preclusion does not apply:  The Arkansas Claims Commission was the only forum in which Smith could bring his claim against the State, but the Commission did not have jurisdiction to address a constitutional claim against Johnson individually.

The doctrine of claim preclusion in Arkansas applies to decisions of administrative agencies like the Claims Commission, *Craven v. Fulton Sanitation Serv., Inc.*, 206 S.W.3d 842, 844 (Ark. 2005), and it "bars not only the relitigation of claims that were actually litigated in the first suit, but also those that could have been litigated." *Jayel Corp. v. Cochran*, 234 S.W.3d 278, 281 (Ark. 2006).  But the doctrine does "not bar a subsequent action where . . . a party was actually prohibited from asserting a claim in the earlier action." *Cater v. Cater*, 846 S.W.2d 173, 176 (Ark. 1993).  The Restatement of Judgments, which has been followed by the Arkansas courts in other respects, *e.g.*, *Ruth R. Remmel Revocable Trust v. Regions Fin. Corp.*, 255 S.W.3d 453, 461 (Ark. 2007); *Smith v. Roane*, 683 S.W.2d 935, 936 (Ark. 1985), likewise provides that claim preclusion is not applicable where "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts . . . and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief." Restatement (Second) of Judgments § 26(1)(c).  The Restatement reasons that "it is unfair to preclude [the plaintiff] from a second action in which he can present those phases of the claim which he was disabled from presenting in the first." *Id*. cmt. c.

The Arkansas Claims Commission has "jurisdiction only over those claims which are barred by the doctrine of sovereign immunity from being litigated in a court of general jurisdiction." Ark. Code § 19-10-204(b)(2)(A). Because the doctrine of sovereign immunity does not bar Smith from litigating his § 1983 claim against Johnson individually in state or federal courts of general jurisdiction, *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985); *Early v. Crockett*, 436 S.W.3d 141, 148 & n.5 (Ark. 2014), the Claims Commission has no jurisdiction over that constitutional claim. Smith's claim against Johnson in his individual capacity could not have been brought in the first action before the Claims Commission, so the doctrine of claim preclusion does not bar the second action. The district court evidently recognized this limitation on claim preclusion, for the court did not rely on claim preclusion to bar the second action if the Commission lacked jurisdiction to decide Smith's § 1983 claim. *See* R. Doc. 26, at 1-2.

The district court thought the doctrine of issue preclusion nonetheless barred Smith's action against Johnson. Issue preclusion bars the relitigation of an issue that was actually litigated in a prior action and was determined by, and essential to, a valid and final judgment. *Deer/Mt. Judea Sch. Dist. v. Kimbrell*, 430 S.W.3d 29, 39 (Ark. 2013). Applying that doctrine, the district court ruled that Smith was precluded from bringing a claim "based on the same facts that were litigated and decided against him" in the Arkansas Claims Commission.

To invoke issue preclusion, however, a defendant must establish not only that a claim arises from the same facts, but that the *same issue* was decided in the prior proceeding. *Estate of Goston v. Ford Motor Co.* (*In re Estate of Goston*), 898 S.W.2d 471, 473 (Ark. 1995). The Arkansas Supreme Court requires a party invoking issue preclusion to establish that "the precise issue" was decided in the first proceeding, *Smith*, 683 S.W.2d at 936, and interprets "very narrowly" whether an issue was previously litigated. *In re Estate of Goston*, 898 S.W.2d at 473.

The Commission did not decide the same issue that Smith seeks to litigate in the present action. The order of the Commission determined only that Smith failed to prove "any *negligence* on the part of the [Department of Correction]." App. 89 (emphasis added). Smith's present claims are that Johnson individually was *deliberately indifferent* to his safety in the prison and *intentionally* cruelly and unusually punished him for the altercation, in violation of the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). One claim involves alleged criminal recklessness, where the defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference," *id*.; the other involves alleged intentional wrongdoing.

The Commission's determination that the Department of Correction was not negligent thus did not resolve the same issues presented here, because negligence is mutually exclusive of deliberate indifference and intent. "The theories of negligence and intentional tort are contradictory and mutually exclusive." *Hockensmith v. Brown*, 929 S.W.2d 840, 845 (Mo. Ct. App. 1996). Accordingly, "there is generally no claim of negligence that flows from intentionally tortious conduct." *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 685 (8th Cir. 2002). The Restatement (Second) of Torts likewise recognizes that negligence "excludes conduct which creates liability because of the actor's intention to invade a legally protected interest," § 282 cmt. d, or because of the actor's criminal recklessness (*i.e.*, deliberate indifference): "[T]he word 'negligence' excludes conduct which the actor does . . . realize as involving a risk to others which is not merely in excess of its utility, but which is out of all proportion thereto." *Id.* cmt. e; *see also id*. ("As the disproportion between risk and utility increases, there enters into the actor's conduct a degree of culpability which approaches and finally becomes indistinguishable from that which is shown by conduct intended to invade similar interests."). For these reasons, even assuming that the Commission's decision on Smith's allegations against the Department of Corrections should be read as a decision about *Johnson's* individual conduct, the Commission's determination that the Department was not "negligent"

did not resolve the precise issues about alleged deliberate indifference and intentional wrongdoing by Johnson that Smith raises in his § 1983 action.

\*   \*   \*

The judgment of the district court is reversed, and the case is remanded for further proceedings.

_____